IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHAUNTAE D. KINDRED,                              CV. 10-908-HZ

        Petitioner,

    v.                                            OPINION AND ORDER

MARK NOOTH,

        Respondent.


ANTHONY D. BORNSTEIN
Office of the Federal Public Defender
101 SW Main Street, Suite 1700
Portland, OR  97204

    Attorney for Petitioner


JOHN KROGER
Attorney General
KRISTEN E. BOYD
Oregon Department of Justice
1162 Court Street, NE
Salem, OR  97301

    Attorneys for Respondent


1 - OPINION AND ORDER

HERNANDEZ, District Judge.

Petitioner, in custody of the Oregon Department of Corrections following conviction on one count of Robbery in the First Degree and one count of Robbery in the Second Degree, brings this habeas corpus action pursuant to 28 U.S.C. § 2254. For the reasons that follow, the Court DENIES the Petition for Writ of Habeas Corpus (#2).

## BACKGROUND

On January 26, 2005, shortly after midnight, Petitioner and a co-defendant ("Brown") approached Mr. Carney ("Carney"), who was collecting cans in the Rockwood area of east Portland. (#25, Ex. 103, Tr. at 69-89.) Carney, who was 60-year old at the time, routinely went out with his bicycle to collect cans between midnight and one a.m. (*Id*.) On this particular night, he parked his bicycle behind a six-foot retaining wall while he collected cans from an adjacent receptacle. (*Id*.)

According to Carney's testimony, Petitioner and Brown approached him and asked if he had a crack pipe. (*Id*. at 72.) Carney replied he did not and he asked if Petitioner had a cigarette. Petitioner then asked if Carney wanted to buy drugs. (*Id*. at 73.) During Carney's conversation with Petitioner, Brown went behind the retaining wall to where Carney had his bicycle. (*Id*. at 72.) A short time later, Carney went behind the retaining wall and Petitioner followed him. (*Id*. at 74.) Behind the wall,

Carney found Brown holding his bicycle upside down and he asked what was going on. Brown accused Carney of having stolen the bike from his residence about three weeks prior and stated he was looking for the serial number. (*Id*. at 72-74.) Mr. Carney replied his son had given him the bike approximately a year before. (*Id*. 71-74.) During this exchange, all three men were in close proximity to each other with Petitioner standing about a foot behind Carney. (*Id*. at 74.) Carney noticed Petitioner had a club partially tucked into his coat sleeve, and in his hand. (*Id*. at 74-75.) Brown stated he was taking the bicycle because it was his. (*Id*. at 74.) Brown and Petitioner left, Brown taking Carney's bicycle and Petitioner riding his own.

Carney testified he flagged down a police officer and reported that two men with a bat stole his purple Cannondale bicycle. The police officer, who had seen Carney on previous occasions on his bicycle collecting bottles and cans, located Petitioner and Brown at a nearby platform of the city's light-rail system ("MAX"). They had a bicycle and a small bat that matched Carney's description of those items. (*Id*. at 95.) Carney arrived at the MAX platform shortly thereafter, and identified Petitioner and Brown as the individuals who took his bicycle. (*Id*. at 79-80.) Petitioner and Brown were taken into custody; Petitioner by the back-up officer after attempting to flee.

Petitioner and Brown went to trial. Petitioner elected to try his case to the court, while Brown elected to be tried before a jury. (#25, Ex. 103.) The trials were held at the same time with common testimony and cross-examination. (*Id.*) Carney testified he did not resist the men taking his bicycle:

> "[b]ecause I'm an older guy. They were two younger gentlemen, and I looked at the short guy behind me, and he had a club in his hand."

(*Id.* at 74-75.) He testified he did not feel threatened when first approached; he did not see the bat when first approached; he first saw the bat when he was behind the wall with the two men, discussing his bicycle; he felt threatened when he saw the bat, and felt he would get beat up or killed if he resisted the men taking his bicycle. (*Id.* at 72, 76-78, 83-84, 88-90.)

The police officer testified: (1) he called for assistance when he saw the defendants on the MAX platform with the purple bicycle Carney had described; (2) he had seen Carney riding the distinctive bicycle in the neighborhood in the preceding months; (3) he approached the MAX platform but he felt "a little bit of danger for my safety" because the back-up officer had not yet arrived, he was approaching two individuals his size or bigger, and he had just been told the individuals had used a bat to take the bicycle from Carney; (4) upon approaching the men, he ordered them to sit down, which Brown did, but which Petitioner refused to do; (5) Brown volunteered the bicycle wasn't his but stated he had paid Carney $5 for it; (6) Brown told him he had given Carney two

4 - OPINION AND ORDER

cigarettes and five dollars for the bicycle, and he had wiped away some dirt to check the serial number but the number was scratched away. (*Id*. at 97-103.)  The officer further testified: he had to "wipe away quite a bit of dirt and grime" to verify the bicycle's serial number, which indicated the number had not been checked recently, and he found the number had not been scratched off (*id*. at 104); and he obtained Carney's consent to be searched "for the five dollars or anything else," but found nothing (*id*. at 104).

   Petitioner testified: (1) he was on his bicycle, on his way home with Brown, when Brown noticed someone he recognized (Carney); (2) Brown engaged Carney in conversation, but he did not speak with Carney because he was busy trying to fix the zipper on his back-pack and he was also riding figure-eights in the parking lot; (3) he put the bat in his coat sleeve because it kept making the zipper of his back-pack pop open; the back-up officer approached him from behind, grabbed him, and told him he was patting him down for weapons in a "Terry Stop"; (4) when the officer went to check his pockets, he "took off."  (*Id*. at 131-154.)  Petitioner denied stealing the bicycle or assisting in stealing the bicycle.  (*Id*.)

   Brown testified: he knew Carney from prior interactions and transactions and approached him; after a brief conversation he offered Carney five dollars and something else for the bicycle - but only after checking the serial number; he didn't know where Petitioner was during the time he was talking with Carney but thought he had continued on to the MAX station.  (*Id*. at 159-162.)

5 - OPINION AND ORDER

On cross-examination Brown stated he had fake drugs on him, that he had previously sold Carney drugs, and he admitted he was essentially "conning" Carney out of his bicycle. (*Id.*, at 163-169.)

The court found Petitioner guilty of one count each of Robbery in the First Degree, Robbery in the Second Degree, and Escape in the Third Degree. (#25, Ex. 104 at 289.) Trial counsel renewed his motion for judgment of acquittal, but the court denied the motion. (*Id.* at 294-95.) With concurrent sentencing, Petitioner was sentenced to a total of 90-months imprisonment under Measure 11, with five years of post-prison supervision. (*Id.* at 305.)

Petitioner directly appealed his convictions presenting, as relevant to this action, the following two assignments of error: (1) the trial court erred by denying his motion for judgment of acquittal for Robbery in the First Degree ; and (2) the trial court erred by denying his motion for judgment of acquittal for Robbery in the Second Degree. (#25, Ex. 105.) The Oregon Court of Appeals affirmed without opinion and the Oregon Supreme Court denied review. (#25, Exs. 111 and 110.)

Petitioner filed a petition for Post-Conviction Relief ("PCR"), challenging his term of post-prison supervision and raising claims of ineffective assistance of counsel. (#25, Ex. 112.) The PCR court granted relief to reduce the term of post-prison supervision from five years to three years, but otherwise denied relief. (#25, Ex. 128.) Petitioner appealed, but the

6 - OPINION AND ORDER

Oregon Court of Appeals affirmed without opinion and the Oregon Supreme Court denied review. (*Id.*, Exs. 133 and 132.)

Petitioner filed the instant petition raising the following three grounds for relief:

> Ground One:  Trial court violated Petitioner's 6th Amendment right to a fair trial and 14th Amendment to due process as well as the Oregon Constitution Article I section 11 when it failed to grant Petitioner's motion for judgment of acquittal for robbery in the first degree.
>
> Ground Two:  Trial court error [sic] and violated Petitioner's 6th and 14th Amendment rights of the U.S. Constitution and the Oregon Constitution Article I section 11 when it denied Petitioner's motion for judgment of acquittal for robbery in the second degree.
>
> Ground Three:  Petitioner's rights under the U.S. Constitution and the Oregon Constitution was violated when the trial court errored [sic] by omitting language and amending the indictment of material substance without the function of the grand jury.

(#2, Pet. at 6-7.)  Respondent argues Petitioner should be denied relief on Ground Three because it was not fairly presented as a federal constitutional issue in state court and is procedurally defaulted, and on Grounds One and Two because the state court decisions denying these claims are neither contrary to, nor an unreasonable application of Supreme Court precedent. (#23, Resp. at 6-8.)  In his Brief in support of the petition, Petitioner states he is focusing his challenge on Grounds One and Two. (#29, Brief at 9.)

/ / /

/ / /

7 - OPINION AND ORDER

**DISCUSSION**

**I.   Procedural Default**

Generally, before a federal court may consider a petition for habeas relief pursuant to 28 U.S.C. § 2254, a state prisoner must have exhausted all available state court remedies through a direct appeal or through collateral proceedings.  See 28 U.S.C. § 2254 (b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) (state courts must have an opportunity to act on claims before they are presented in a habeas petition).  The exhaustion requirement is satisfied when federal claims have been fairly presented to the state's highest court as a federal question.  *Duncan v. Henry*, 513 U.S. 364, 366 (1995); *Castillo v. McFadden*, 370 F.3d 882, 886 (9th Cir. 2004).  A federal claim is "fairly presented" to the state courts if it was presented "(1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim."  *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005)(internal citations omitted).

When a state prisoner fails to exhaust his federal claims in state court and the state court would now find the claims barred under applicable state rules, the federal claims are procedurally defaulted.  *Casey v. Moore*, 386 F.3d 896, 920 (9th Cir. 2004); *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).  Habeas review of procedurally defaulted claims is barred unless the petitioner demonstrates cause for the procedural default and actual prejudice,

8 - OPINION AND ORDER

or that the failure to consider the claims will result in a miscarriage of justice. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Coleman*, 501 U.S. at 750. "Cause" for procedural default exists only if petitioner shows "that some objective factor external to the defense impeded counsel's efforts to comply with the state's procedural rule." *Murray v. Carrier,* 477 U.S. 784, 488 (1986). Demonstrating that failure to consider the claim will result in a "fundamental miscarriage of justice" requires a showing of actual innocence. *Schlup v. Delo,* 513 U.S. 298, 329 (1995); *Calderon v. Thomspon*, 523 U.S. 538, 559 (1998).

Upon review of the record, the Court finds Ground Three is procedurally defaulted because it was not presented as a federal constitutional question to the Oregon Supreme Court and the time for doing so has passed.[1] *See* Or. Rev. Stat. § 138.071. Petitioner has not made a showing of cause and prejudice to excuse the default, nor has he shown that failure to consider his claim will result in a miscarriage of justice. Furthermore, Petitioner's Brief does not show he is entitled to relief. (#29, at 9.) For these reasons, federal habeas relief on Ground Three is precluded.

/ / /

/ / /

---

[1] In Oregon, the Oregon Supreme Court is the highest state court with jurisdiction to hear claims in satisfaction of the exhaustion requirement. *See* Or. Rev. Stat. § 138.650 (2005).

**II.   The Merits**

    **A.   Standards of Review**

Following passage of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), an application for a writ of habeas corpus shall not be granted unless the adjudication on the merits in State court was:

> (1) contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
>
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In *Williams v. Taylor*, 529 U.S. 362, 386-389 (2000), the Supreme Court construed this provision as requiring federal habeas courts to be highly deferential to the state court decisions under review. In *Cullen v. Pinholster*, ___ U.S. ___; 131 S.Ct. 1388, 1398-1402 (April 4, 2011), the Court reiterated the highly deferential nature of federal habeas review, and limited federal review "to the record that was before the state court that adjudicated the claim on the merits."

"'Clearly established Federal law' is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004) *cert. denied*, 126 S. Ct. 484 (2005). The terms "contrary to" and "unreasonable application" have independent meanings. *Sarausad v. Porter*, 479 F.3d 671, 676 (9th

10 - OPINION AND ORDER

Cir. 2007). A state court decision is "contrary to" clearly established federal law if it is "in conflict with", "opposite to" or "diametrically different from" Supreme Court precedent. *Williams, v. Taylor*, 529 U.S. 362, 388 (2000). An "unreasonable application" of clearly established federal law occurs when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lambert*, 393 F.3d at 974 (citing *Williams*). "The state court's application of . . . law must be *objectively unreasonable*." *Williams*, 529 U.S. at 411 (emphasis added). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied clearly established federal law erroneously or incorrectly." *Woodford*, 537 U.S. at 24-25 (2002)(internal citations omitted). Rather, "a habeas court must determine what arguments or theories ... could have supporte[d] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Pinholster*, 131 S.Ct. at 1402 (citing *Harrington v. Richter*, 562 U.S. ___,___, 131 S.Ct. 770, 786 (2011)). In sum, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."

11 - OPINION AND ORDER

*Richter*, ___ U.S. ___, 131 S.Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

The last reasoned decision by the state court is the basis for review by the federal court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Franklin v. Johnson*, 290 F.3d 1223, 1233 n. 3 (9th Cir. 2002). When a state court reaches a decision on the merits but provides no reasoning to support its conclusion, the federal habeas court must conduct an independent review of the record to determine whether the state court clearly erred in its application of Supreme Court law. *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). Nevertheless, the federal court gives deference to the state court's ultimate decision. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002). To the extent a petitioner challenges a state court's interpretation of state law, the claim is not cognizable on federal habeas review. *Swarthout v. Cook*, 131 S. Ct. 859, 861 (2011)(citing *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985).

    B.   <u>**Analysis**</u>

In Grounds for Relief One and Two, Petitioner contends that the evidence presented at trial was insufficient: (a) to show that he used or attempted to use a dangerous weapon, an element of Robbery in the First Degree, or (b) to show that his presence was to aid his co-defendant in the commission of a theft, an element of Robbery in the Second Degree, and accordingly, the trial court's

12 - OPINION AND ORDER

denial of his motions for judgment of acquittal on two occasions was error. A federal habeas claim challenging a state court conviction on the basis there was insufficient evidence for conviction is governed by *Jackson v. Virginia*, 443 U.S. 307 (1979).

The Due Process Clause of the Fourteenth Amendment requires that "no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof - defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson*, 443 U.S. at 316 (explaining the proof beyond a reasonable doubt standard as defined in *In re Winship*, 397 U.S. 358, 364 (1970)). Under *Jackson*, a petitioner challenging the sufficiency of the evidence upon which he was convicted is entitled to federal habeas relief "if it is found that upon the record evidence adduced at the trial *no* rational trier of fact could have found proof of guilt beyond a reasonable doubt." 443 U.S. at 324 (emphasis added). "[T]he standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id*., n.16. And a reviewing court must "review the evidence 'in the light most favorable to the prosecution.'" *McDaniel v. Brown*, 130 S.Ct. 665, 673 (2010) (quoting *Jackson*, 443 U.S. at 319). Furthermore, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the

13 - OPINION AND ORDER

trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. The role of the reviewing court is not to determine whether *it* believes there was evidence to sustain the conviction. Rather, the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319 (emphasis in original).

To prevail here, Petitioner must show that the state court adjudication of his claims, alleging the evidence at trial was insufficient for conviction on Robbery 1 and Robbery 2, was contrary to, or an unreasonable application of *Jackson*. On direct appeal, the Oregon courts upheld Petitioner's conviction and rejected the claims presented here, but without providing reasoning for the decisions. The Court, therefore, conducted an independent review of the record to determine whether the state courts clearly erred in the application of *Jackson v. Virginia*. Upon review of the record, the Court finds there is no evidence the state courts erred.

    Or. Rev. Stat. § 164.415 provides, in relevant part:

    (1) A person commits Robbery in the First Degree if the
    person violates ORS 164.395 and the person:
    * * *
    (b) Uses or attempts to use a dangerous weapon[;]* * *

Or. Rev. Stat. § 164.405 provides:

14 - OPINION AND ORDER

> (1) A person commits Robbery in the Second Degree if the person violates ORS 164.395 and the person:
> (a) Represents by word or conduct that the person is armed with what purports to be a dangerous or deadly weapon; or
> (b) Is aided by another person actually present.  * * *

ORS 164.395 provides, in relevant part:

> (1) A person commits the crime of robbery in the third degree if in the course of committing or attempting to commit theft or unauthorized use of a vehicle ... the person uses or threatens the immediate use of physical force upon another person with the intent of:
> (a) preventing or overcoming resistance to the taking of the property or to retention thereof immediately after the taking[.] * * *

In *State v. Hamilton*, 348 Or. 371, 378, 233 P.3d 432 (2010), *quoting State v. White*, 346 Or. 275, 290, 211 P.3d 248 (2009)(emphasis added), the Oregon Supreme Court reiterated:

> "[r]obbery is the taking of property using threats of violence or otherwise creating a sense of fear in the victim, thus forcing the victim to hand over property. *It is the concept of fear or threat of violence that separates robbery from mere theft*. * * * The use or threat of violence is what causes the victim to part with property, and that coercive effect is what each of the robbery statutes addresses."

And the Oregon Court of Appeals recently stated that "in order to 'use' a dangerous weapon as required by ORS 164.415(1)(b), a defendant must carry out a purpose or action by means of the dangerous weapon, make the weapon instrumental to an end or process, or apply the weapon to his or her advantage." *State v. Osborne*, 242 Or.App. 85, 89, 255 P.3d 513 (April 13, 2011)(upholding Robbery I conviction of defendant who held a knife at his side as he spoke to a store clerk).

15 - OPINION AND ORDER

At the close of the State's case, following Carney's and the police officer's testimony, trial counsel moved for judgment of acquittal on the Robbery I and Robbery II charges, arguing there was no evidence Petitioner attempted to use the bat to prevent or overcome resistance, or to threaten the victim; and there was no evidence Petitioner and Brown were working together. (#25, Ex. 103 at 114-115.) Trial counsel also argued for judgment of acquittal on the basis Carney had not identified the defendants in court. (*Id.* at 115.) The trial court denied the motions concluding:

> "[V]iewing the evidence in the light most favorable to the State on this issue and (inaudible) has presented sufficient evidence to get past the Motion for Judgment of Acquittal. The same on the other issues related to the other charges as to both defendants, Robbery in the First Degree and Robbery in the Second Degree charges."
> (*Id.* at 125.)

Petitioner and his co-defendant then testified in their own defense. Much of their testimony was in conflict with the testimony given by Carney, and the police officer.

Facing conflicting inferences from conflicting testimony, this Court "must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. Accordingly, the Court presumes the trial court credited the testimony from Carney and the police officer over the defendants' testimony, including the police officer's testimony that he feared for his safety when approaching Petitioner and Brown on the MAX platform given their size and that

16 - OPINION AND ORDER

they had a bat, and Carney's testimony that Petitioner followed him behind the retaining wall and stood approximately one foot behind him as he asked Brown what was going on; that the three men were in close proximity to each other when he first saw the bat in Petitioner's hand; that he felt threatened when he saw the bat; and that he felt he would be harmed if he tried to keep his bicycle because the defendants were younger, bigger, and had a bat.

Viewing the evidence presented at trial in the light most favorable to the prosecution, and in the context of the substantive elements for Robbery under Oregon law, this Court cannot conclude that *no* rational trier of fact could have found proof beyond a reasonable doubt that: (a) Petitioner used or attempted to use a dangerous weapon, an element of Robbery in the First Degree, or (b) that Petitioner's presence was to aid his co-defendant in the commission of a theft, an element of Robbery in the Second Degree. Therefore, the Court finds the state court adjudication of Petitioner's claims was neither contrary to, nor an unreasonable application of established Federal law and, accordingly, Petitioner is not entitled to habeas relief on Grounds One and Two.

/ / /

/ / /

/ / /

## **CONCLUSION**

Based on the foregoing, the Petition for Writ of Habeas Corpus (#2) is denied. The Court declines to issue a Certificate of Appealability on the basis that Petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this 19th day of October, 2011.

                                              /s/ Marco A. Hernandez
                                              Marco A. Hernandez
                                              United States District Judge